BRENELL (VUYTON v.). See Case No. 17,-026.

## Case No. 1,830.

### Ex parte BRENEMAN.

[Crabbe, 456;[1] 1 Pa. Law J. 33, 183.]

District Court, E. D. Pennsylvania. May 21, 1842.

ACT OF BANKRUPTCY — ASSIGNMENT FOR BENEFIT OF CREDITORS.

1. The intention of congress in passing the bankrupt law of 19th August, 1841 [5 Stat. 440], was for the benefit of both creditors and debtors, and to produce a general equality among the former.

2. There is a marked distinction, under the bankrupt law, between assignments by voluntary and involuntary bankrupts.

3. The decisions in Pennsylvania which recognise the validity of assignments with preferences, do so expressly on the ground that no bankrupt law was in existence when they were made.

4. Bankruptcy does not consist in the proceedings in court; it occurs in the course of a man's business, and the proceedings are to ascertain whether or not he is a bankrupt.

5. A general assignment by an insolvent, for the benefit of preferred creditors, is an act of bankruptcy, even if made without moral fraud, and under the importunity of creditors.

[Cited in Grow v. Ballard, Case No. 5,848; Rison v. Knapp, Id. 11,861.]

In bankruptcy. This was a petition by certain creditors of Henry Breneman, to have him declared a bankrupt, under the act of 19th August, 1841 (5 Stat. 440). It appeared that Breneman was a retailer of merchandise, in the borough of Columbia, in Lancaster county, Pennsylvania; that on the 9th of March, 1842, he requested one Reuben Mullison to take an assignment of all his property, stating that he was obliged to that course, as his brother, Gideon Breneman, to whom he was indebted, was "troubling him and threatening to push him, and he could not get on any further," he being indebted to Gideon Breneman in a large sum, part of which belonged to the estate of another brother, Levi, for whom Gideon was trustee; and that on the 10th of March, 1842, a general assignment was accordingly made to Mullison. Under this assignment there were various preferences:—to Gideon Breneman in his own right, and as trustee of Levi Breneman, and to others. After some unsuccessful negotiations between the credit-

[1] [Reported by William H. Crabbe, Esq.]

ors and Mullison, this proceeding was commenced.

B. H. Brewster, for petitioning creditors.

The grounds of this application are, that the respondent, on the 10th of March last, made a fraudulent assignment in contemplation of bankruptcy; and that he gave preferences to some creditors over others. The bankrupt law makes void and fraudulent all transfers in contemplation of bankruptcy, and the whole end, scope, and object of the bankrupt law is to prevent preferences, and produce equality among creditors. Our law makes such preference a fraud. Eden, Bankr. Law, 37. The assignment imposed terms on the creditors; it was voluntary, as no suit was pending or threatened at the time. Thornton v. Hargreaves, 7 East, 544. The only reason for allowing preferences at any time is, that they relieve the debtor from present-difficulties, and enable him to go on with his business. Morgan v. Horseman, 3 Taunt. 241; Eden, Bankr. Law, 38, 39. The first section of the bankrupt law makes it an act of bankruptcy to put property out of the way of execution, as was done by this assignment. 4 Har. Dig. tit. "Bankrupt;" Wedge v. Newlyn, 4 Barn. & Adol. 831. So also is the conveying away of the principal part of a trader's goods and other property. Carvalho v. Burn, 1 Nev. & M. 700; Botcherby v. Lancaster, 1 Adol. & E. 77; Stewart v. Moody, 1 Cromp. M. & R. 777; Pulling v. Tucker, 4 Barn. & Ald. 382; Wheelwright v. Jackson, 5 Taunt. 109; Ogden v. Jackson, 1 Johns. 370; Logan v. Patrick, 5 Cranch [9 U. S.] 288. And this was a general assignment.

Mr. Mallery, for Breneman.

The only act of bankruptcy which has been alleged is the assignment, and the intent with which it was made. The act of congress requires the conveyance or assignment to be fraudulent in order to make it an act of bankruptcy. What does "fraudulent" mean under the act? We must resort to the common law for an explanation, and we answer that the conveyance—to be an act of bankruptcy—must be such an one as would be void for fraud at common law. This must have been the meaning of congress; had they intended differently, they would have so expressed it. But to pay an honest debt is not fraudulent, nor to pay one creditor before another, neither is it fraud in a creditor to obtain a lien by suit and judgment. To make a payment fraudulent it must be to a person who has no right or claim. The assignment here, therefore, was not fraudulent at common law; it would not have been so under the statute of 13th Eliz.; and both statute and decision had made it valid in Pennsylvania. The construction of the bankrupt law contended for by the other side, would repeal the act of the legislature, and

reverse the decision of the supreme court, of Pennsylvania. Congress has no such power or authority; their constitutional right to pass a bankrupt law may be exercised without repealing the laws of a state, or impairing the contracts of individuals. The whole of the second section of the act must be taken together, and to make any of the acts there enumerated an act of bankruptcy, it must be for the benefit of a person not a bona fide creditor. The preference, in order to be an act of bankruptcy, must not only be fraudulent—and fraud is to be proved by the petitioners, not presumed—but it must be made in contemplation of bankruptcy, of which there is no evidence in this case. The assignment must be voluntary; it must be spontaneously made with a view to becoming a bankrupt, before it will be an act of bankruptcy, and it must not have been produced by the urgency, entreaty, or persuasion of creditors. Smith v. Payne, 6 Term R. 152; McMechen v. Grundy, 3 Har. & J. 185–192. Nor does the fact of an assignor being insolvent, render the assignment an act of bankruptcy. Fidgeon v. Sharpe, 5 Taunt. 539; Morgan v. Brundrett, 5 Barn. & Adol. 289.

Mr. Meredith, for petitioning creditors, in reply.

Under the act of congress, petitioning creditors must establish three facts to make out their case: these are—First, a debt of sufficient amount due to them; second, that the respondent is a trader; and third, an act of bankruptcy. This third fact is the only one which is disputed now, and the question is, whether the assignment of the 10th March was an act of bankruptcy. The bankrupt law was intended to obtain from the debtor, in consideration of its benefits conferred upon him, a surrender of all his property for the equal benefit of his creditors; and any act which prevents this effect is a violation of the intent of the law. We contend that the assignment was evidently, and on the face of it, just such an act: it was for the benefit of certain particular creditors. and tended to prevent an equal distribution among all. We admit that the assignment would have been good at common law, and under the statute of Elizabeth; but under the bankrupt law it is void. Neither does the argument from its validity under the Pennsylvania decisions and laws avail anything in supporting it: granting that it would be good as regards Pennsylvania law only, the bankrupt law, which makes it void, is supreme; and it may be observed, also, that those very Pennsylvania decisions which recognise the validity of such an assignment. do so on the express ground that there was then no bankrupt law in existence. This assignment, therefore, was void under the bankrupt law, and an act of bankruptcy—First, because it was fraudulent. and second, because it was in contemplation of bankruptcy. It was fraudulent—not in any

common law or criminal sense—but under the act of congress, involving no idea of moral fraud, because in contravention of the policy of that act; and any other construction of the word "fraudulent" used therein would render the law wholly useless. It was in contemplation of bankruptcy. It was itself an act of bankruptcy because a preference. The term "contemplation of bankruptcy" used in the act, does not mean an anticipation of proceedings in court. Bankruptcy is the breaking up of a man's business by reason of his embarrassed circumstances, while the proceedings in court are merely to inquire whether this state of affairs has arisen before the petition is filed. Urgency of creditors has been assigned as an excuse for this assignment. We reply that, in the first place, such urgency only justifies a partial delivery of goods, not a general breaking up of business, and secondly, that we do not think the evidence in this case raises the question of urgency at all.

RANDALL, District Judge. On the 7th of April, 1842, John C. Weber and others, trading as Weber, Miller & Hand, and Dominic Eagle and others, trading as Eagle, Wescott & Camblos, of Philadelphia, presented their petition to this court, setting forth that Henry Breneman, a retailer of merchandise in the county of Lancaster, owed debts exceeding two thousand dollars, and owed the petitioners five hundred dollars and upwards. They alleged that the said Henry Breneman had, on the 10th day of March then last past, become bankrupt within the act of congress, by 1st, having on that day made a fraudulent assignment, gift, and transfer of his lands, tenements, goods, chattels, credits, and evidences of debts; and 2d, having (in contemplation of bankruptcy, and for the purpose of giving Gideon Breneman, a creditor, endorser, and surety of said Henry Breneman, as also other creditors and endorsers of the said Henry Breneman, a preference or priority over the general creditors of him the said Henry Breneman) conveyed and transferred all his property to Reuben Mullison, of Lancaster county, by indenture of assignment, dated the 10th day of March, 1842. And they prayed that proceedings might be had to declare the said Henry Breneman a bankrupt within the purview of the act of congress.

Notice of the application was published, as required by the act of congress and rules of court, and also served personally on the said Henry Breneman, who opposes the decree prayed for, and in answer to the said petition, says: 1. That he has not made a fraudulent conveyance, assignment, &c. 2. That he has not, in contemplation of bankruptcy, and for the purpose of giving Gideon Breneman, a creditor, endorser, and surety, or other creditors and endorsers, a preference over his general creditors, conveyed and transferred his property as stated in the said

petition. 3. That he has never contemplated bankruptcy, or any application for the benefit of the bankrupt law. 4. That the assignment made by him was yielded to the importunity of one or more of his creditors, to secure bona fide debts, and without collusion.

Evidence has been exhibited on behalf of the respondent which proves that he was a retailer of merchandise in Columbia, Lancaster county, and was indebted to his brother Gideon Breneman, in his individual capacity, and also as trustee for Levi Breneman, another brother, who is said to be of unsound mind; that he was also indebted to the Columbia Bank and Bridge Company in the amount of a bill drawn by him on J. Kettlewell & Co., of Baltimore, payable at sight, and protested for non-payment; that he was importuned to pay or secure payment of other debts, and on the 9th of March, applied to Reuben Mullison, told him he was compelled to make an assignment, and requested him to become the assignee; his brother Gideon was troubling him, he said, and he could not get along any further; that he owed his brother a large sum of borrowed money, part of which belonged to his brother Levi, who was in the hospital, and for whom Gideon was guardian; and if it was not for this and some other borrowed money, he had from other people, he would apply for the benefit of the bankrupt law. On the 10th of March, 1842, he executed an assignment of all his property to Mullison, in trust, after payment of expenses, to pay, as of the first class, a debt of $2,200, due to Gideon Breneman, trustee of Levi Breneman, or in his individual capacity; a debt of $876.25, due on a bond to Gideon Breneman; a debt of $700, due to Henry Heisse, for which Gideon Breneman was security; a note for $1,000, drawn by Henry Breneman, endorsed by Gideon Breneman, and discounted by the Columbia Bank and Bridge Company; a debt of $126, owing on a due bill to James Long; a debt of $127.48 to the estate of Christian Yeanish; a debt of $500 to Dr. Hugh McCorkle; the freedom dues of Polly Hogendobler, a bound girl; a debt of $300 to the sheriff of Lancaster county, being a balance of purchase-money due on property purchased by him at sheriff's sale; and a debt of $1,251.10 to the Columbia Bank and Bridge Company, being the amount of the draft on Kettlewell & Co. And, after payment of these preferred debts, the balance was to be paid to those creditors who should execute a release within ninety days. When the assignment was made known in Philadelphia, some of the creditors residing here, and among them one or more of the petitioners, went to Columbia, and proposed that the assignee should decline acting, and some of the Philadelphia creditors be appointed in his place, as it was supposed the goods could be sold to better advantage here, and, in event of that arrangement being effected, the Philadelphia creditors were to pay or secure all the preferences. This proposition was submitted to Gideon Breneman and declined by him, and soon after the present proceedings were commenced.

On the part of the creditors it is contended that the assignment is in violation of the act of congress entitled "An act to establish a uniform system of bankruptcy throughout the United States," passed on the 19th of August, 1841 (5 Stat. 440), and therefore void, and in itself an act of bankruptcy; while the respondent contends that the assignment is not fraudulent within the meaning of the act of congress, as all the preferred debts were honestly and justly due; that it was not made in contemplation of bankruptcy, as the respondent at the time avowed his determination not to apply for the benefit of the bankrupt law; and that it was yielded to the importunity of his creditors.

THE COURT then proceeded to read the first and second sections of the bankrupt law, and continued:

It is admitted that in this case there was no moral fraud; that all the debts preferred were bona fide and justly due; and that under the laws of Pennsylvania, independently of the bankrupt law, the legality of the assignment could not be questioned. It was the exercise of a power resulting from ownership of property, which those laws had not restrained. But there are many cases in which the acts of parties who intend nothing dishonest or immoral become legally fraudulent, as being contrary to the policy of the law. A familiar instance of this is the sale of personal property for a valuable consideration, where the property is left in the possession of the vendor; this, although perfectly honest and binding between the parties, is in law fraudulent as to creditors, because it enables the debtor to obtain a credit by the possession of goods to which he is not entitled. The whole policy of the bankrupt law is equality among the creditors (with the exceptions mentioned in the act); it was intended to prevent the debtor from giving all his property to some relative, or favorite creditor, to the exclusion of all the rest; and it declares that such a disposition of his property shall be void, as a fraud upon the creditors not preferred. That such was the intention of congress in passing the law now in force cannot be questioned. The second section of the act provides, first, for the case of involuntary bankrupts, by declaring that all future conveyances, payments, securities, &c., made or given by any bankrupt, in contemplation of bankruptcy, shall be void, and a fraud within the act; and the assignee under the bankruptcy shall be entitled to claim the property so conveyed as part of the assets of the bankrupt; it then provides that, in case of a voluntary application, if any such assignment had been made by the petitioner after the 1st of Janu-

ary, 1841 (upwards of seven months before the passage of the law, and more than a year before it took effect), in contemplation of the passage of a bankrupt law, he should not be entitled to his discharge, unless it was assented to by a majority of the creditors not preferred. Showing a marked distinction between the cases of voluntary and involuntary bankrupts. Again, it is made the duty of the assignee to claim the property as part of the assets of the bankrupt; but how can this be done unless the party be declared a bankrupt? for until this, until the decree of bankruptcy, there can be no assignee.

The doctrine contended for by the respondent's counsel would completely nullify so much of the law as prohibits a preference of one creditor over another. A man might assign the whole of his estate to one or more favorite creditors, to whom he was bona fide indebted, and then decline to apply for the benefit of the bankrupt law, but if pressed by his other creditors, be content with an exemption from personal arrest by a discharge under the state insolvent law; and if his creditors cannot proceed against him, and have him declared a bankrupt by adverse proceedings, the assignment would remain effectual. Such, I conceive, could not have been the intention of congress. The law was intended for the benefit of creditors as well as of debtors; but the construction of the respondent would render it for the benefit of debtors only.

It has been said that congress had no power to pass a law which would have the effect of making void an assignment recognised by the laws of Pennsylvania. This argument was not much pressed; indeed, it could not be, for, independent of the power given to congress by the eighth section of the first article of the constitution of the United States, the decisions which recognise the validity of assignments with such preferences do so expressly on the ground that there was no bankrupt law in existence at the time. But, it is said, the respondent never intended applying for the benefit of the bankrupt law, and, therefore, the assignment was not made in contemplation of bankruptcy. Bankruptcy, however, does not consist in the proceedings in court. It takes place in the course of a man's business, and the proceedings in court are to ascertain whether the party was or was not a bankrupt at the time the original petition was filed. Bankruptcy is well defined to be "the state of a man unable to pursue his business, and meet his engagements, in consequence of the derangement of his affairs." Now what can more effectually render a man unable to pursue his business, and meet his engagements, than a transfer of all his property for the benefit of some of his creditors to the exclusion of others? Can it be supposed he did not contemplate the entire breaking up of his business, and his inability to meet his engagements, at the time he executed the as-

signment? In the case before us the instrument itself avers, as part of the consideration, "sundry debts and sums of money owing by the said Henry Breneman, which he is unable to pay at present." It would be difficult indeed to establish that any act was done in contemplation of bankruptcy within the meaning of the act of congress if this was not such an act. Again, it is said this assignment was yielded by the respondent to the importunity of his creditors, and therefore it is not an act of bankruptcy. In England it has been decided that a debtor who, yielding to the importunity of his creditor, delivers him a portion of his property in satisfaction of his debt, whereby the creditor obtains more than the other creditors will receive on an equal distribution, does not thereby commit an act of bankruptcy. But no case is found in which the debtor surrendered the whole of his property to the importunity of his creditor, which was not declared an act of bankruptcy; because, by a surrender of the whole and breaking up of his business, the debtor does not relieve himself from any present difficulty, which is considered the motive for such an act when really done under the pressure of a threat. But in this case that question can hardly be said to arise under the evidence; the proof of pressure by any one before the assignment, is extremely slight, and several persons are preferred who do not appear to have made any demand at all of the amount due them.

In my opinion the petitioners have fully established their right to the decree prayed for, and it is accordingly awarded to them.